**NO. 25-1185**

### In The
# United States Court Of Appeals
## For The Fourth Circuit

**TIFFANY ADELE KING, as Administratrix of the Estate of Maurice Antoine King,**

*Plaintiff – Appellee,*

**v.**

**CHARLES S. BLACKWOOD, in his official capacity as Sheriff of Orange County; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,**
**official bond for Defendant Sheriff Blackwood;**
**WILLIAM D. BERRY, JR., in his individual capacity;**
**THOMAS E. LINSTER, III,**

*Defendants – Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**AT GREENSBORO**

_____

### BRIEF OF APPELLANTS
_____

**Brian F. Castro**
**WOMBLE BOND DICKINSON (US) LLP**
**555 Fayetteville Street**
**Suite 1100**
**Raleigh, NC 27601**
**(919) 755-8135**

**Sonny S Haynes**
**WOMBLE BOND DICKINSON (US) LLP**
**1 West 4th Street**
**Winston-Salem, NC 27101**
**(336) 721-3632**

*Counsel for Appellants*

*Counsel for Appellants*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _25-1185_    Caption: _Tiffany Adele King v. Charles S. Blackwood et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Charles S. Blackwood, Orange County Sheriff_
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Brian F. Castro                     Date:        3-13-2025

Counsel for: Charles S. Blackwood

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _25-1185_        Caption: _Tiffany Adele King v. Charles S. Blackwood et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Travelers Casualty and Surety Company of America_
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO


2.    Does party/amicus have any parent corporations?                    ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

       See Attachment 1.


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Brian F. Castro                    Date:    3-13-2025

Counsel for: Travelers Casualty and Surety Comp

- 2 -

Print to PDF for Filing

## <u>ATTACHMENT 1</u>

Travelers Casualty and Surety Company of America is 100% owned by Travelers Casualty and Surety Company, which is 100% owned by Travelers Insurance Group Holdings Inc., which is 100% owned by Travelers Property Casualty Corp., which is 100% owned by The Travelers Companies, Inc. The Travelers Companies, Inc. is the only publicly held company in the corporate family.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _25-1185_        Caption: _Tiffany Adele King v. Charles S. Blackwood et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_William Berry_
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Brian F. Castro                    Date:      3-13-2025

Counsel for: William Berry

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No.  25-1185          Caption:  Tiffany Adele King v. Charles S. Blackwood et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Thomas Linster
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO

2.     Does party/amicus have any parent corporations?     ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐YES ☑NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation?                    ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
        party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
        caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
        corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational
        victim of the criminal activity and (2) if an organizational victim is a corporation, the
        parent corporation and any publicly held corporation that owns 10% or more of the stock
        of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Brian F. Castro                          Date:        3-13-2025

Counsel for: Thomas Linster

- 2 -

Print to PDF for Filing

## TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................... iii

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUES ................................................................... 3

STATEMENT OF THE CASE ............................................................... 4

    I.    Statement of Facts ................................................................. 4

    II.   Relevant Procedural Posture ............................................... 12

SUMMARY OF ARGUMENTS .............................................................. 13

ARGUMENT ...................................................................................... 14

    I.    Standard of Review ............................................................. 14

    II.   The District Court Erred in Applying the Fourteenth Amendment's Purely Objective Analysis in Addressing the Section 1983 Claims of a Decedent Who Plead Guilty to Federal Drug Crimes ..................................................... 16

    III.  The District Court Erred in Denying Each of the Individual Officers Qualified Immunity .............................. 21

        A.    Overview of Qualified Immunity ................................ 21

        B.    Legal Analysis of Deliberate Indifference Claims in the Context of Assaults, Inmate Safety ................. 24

        C.    Legal Analysis of Deliberate Indifference Claims in the Context of Medical Needs ................................. 29

        D.    Each Individual Defendant is Entitled to Qualified Immunity Because They Did Not Violate Decedent's Constitutional Rights ............................... 30

i

E.  Each Individual Defendant is Also Entitled to Qualified Immunity Because They Did Not Violate Any Clearly Established Rights of the Decedent ........ 38

IV.  The District Court Erred in Denying Sheriff Blackwood Summary Judgment on the *Monell* Claims .......................... 44

A.  Absent an Underlying Constitutional Violation, the Claims Against Sheriff Blackwood Must Fail ....... 44

B.  Absent a "Clearly Established" Violation of Law, the Claims Against Sheriff Blackwood Are Improper .................................................................... 45

C.  The Claims Against Sheriff Blackwood Are Otherwise Inappropriate for Lack of Causation ........ 49

V.  The District Court Erred in Denying Summary Judgment on the Claim on the Sheriff's Surety Bond ......... 51

CONCLUSION ........................................................................ 52

REQUEST FOR ORAL ARGUMENT .................................... 52

CERTIFICATE OF COMPLIANCE ...................................... 53

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

Altman v. High Point,
   330 F.3d 194 (4th Cir. 2003) ...........................................................2

Anderson v. Caldwell Cty.,
   524 F. App'x 854 (4th Cir. 2013) .....................................................2

Anderson v. Creighton,
   483 U.S. 635 (1987) .........................................................................23

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986) .........................................................................15

Andrews v. City of Philadelphia,
   895 F.2d 1469 (3d Cir. 1990).........................................................45

Arrington-Bey v. City of Bedford Heights, Ohio,
   858 F.3d 988 (6th Cir. 2017) ....................................................46-48

Ashcroft v. al-Kidd,
   131 S. Ct. 2074 (2011) ...................................................................23

Ash v. Garden,
   No. 21-CV-1329-JPG, 2024 U.S. Dist. LEXIS 55534
   (S.D. Ill. Mar. 27, 2024)............................................................19-20

Atkinson v. Godfrey,
   100 F.4th 498 (4th Cir. 2024).........................................................24

Berry v. Muskogee,
   900 F.2d 1489 (10th Cir. 1990) .....................................................18

Boykin v. Alabama,
   395 U.S. 238 (1969) ..............................................................17, 20

Brown v. Gilmore,
   278 F.3d 362 (4th Cir. 2002) ...........................................................2

Brown v. Harris,
   240 F.3d 383 (4th Cir. 2001) ....................................................... 29

Buffington v. Baltimore County, Md.,
   913 F.2d 113 (4th Cir.), cert. denied, 499 U.S. 906 (1991) ............ 50

Cagle v. Sutherland,
   334 F.3d 980 (11th Cir. 2003) ...................................................... 40

Carmona v. Martin,
   2024 WL 4490695 (4th Cir. Oct. 15, 2024) ........................ 28, 31, 37

Castro v. County of Los Angeles,
   833 F.3d 1060 (9th Cir. 2016) ...................................................... 29

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ..................................................................... 15

City and County of San Francisco, Calif. v. Sheehan,
   135 S. Ct. 1765 (2015) ................................................................. 22

City of Canton v. Harris,
   489 U.S. 378, 109 S. Ct. 1197 (1989) ........................................... 50

City of Los Angeles v. Heller,
   475 U.S. 796 (1986) ..................................................................... 44

City of Tahleqah, Oklahoma v. Bond,
   595 U.S. 9, 142 S. Ct. 9 (2021) ..................................................... 24

Collins v. City of Parker Heights,
   503 U.S. 115 (1992) ..................................................................... 49

Cox v. Quinn,
   828 F.3d 227 (4th Cir. 2016) ....................................................... 27

Crawford-El v. Britton,
   523 U.S. 574 (1998) ..................................................................... 21

Danser v. Stansberry,
   772 F.3d 340 (4th Cir. 2014) ................................................. 28, 31

iv

Doe v. Broderick,
    225 F.3d 440 (4th Cir. 2000) ........................................................ 23

Estate of Pollard v. Hood County, Texas,
    579 Fed. Appx. 260 (5th Cir. 2014) ............................................ 33

Farmer v. Brennan,
    511 U.S. 825 (1994) ............................................................ passim

Febus-Rodrigues v. Betancourt-Lebron,
    14 F.3d 87 (1st Cir. 1994) ........................................................... 49

First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.,
    672 F. App'x 229 (4th Cir. 2016) ............................................... 15

Fitzpatrick v. Las Vegas Metro. Police Dep't,
    No. 2:17-cv-01886-JAD-BNW, 2020 U.S. Dist. LEXIS 19852
    (D. Nev. Feb. 3, 2020) ................................................................. 19

Gernstein v. Pugh,
    420 U.S. 103 (1975) .............................................................. 17, 20

Goodman v. Kimbrough,
    718 F.3d 1325 (11th Cir. 2013) ................................................. 34

Gordon v. Schilling,
    937 F.3d 348 (4th Cir. 2019) ...................................................... 25

Grant v. N.Y.C. Dep't of Corr.,
    94 Civ. 2793 (CSH), 1996 U.S. Dist. LEXIS 312
    (S.D.N.Y. Jan. 11, 1996) ............................................................. 19

Grayson v. Peed,
    195 F.3d 692 (4th Cir. 1999) ...................................................... 29

Gray v. Laws,
    51 F.3d 426 (4th Cir. 1995) ........................................................ 45

Grochowski v. Clayton Cty.,
    961 F.3d 1311 (11th Cir. 2020) ................................................. 40

Hagan v. Franklin County Sheriff's Office,
        695 F.3d 505 (6th Cir. 2012) ........................................................ 48

Hakim v. Warden,
        Civil Action No. ELH-22-168, 2024 U.S. Dist. LEXIS 38843
        (D. Md. Mar. 5, 2024) .................................................................. 19

Hale v. Tallapoosa Cnty.,
        50 F.3d 1579 (11th Cir. 1995) ...................................................... 34

Henry v. Purnell,
        501 F.3d 374 (4th Cir. 2007) ....................................................... 21

Hill v. Crum,
        727 F.3d 312 (4th Cir. 2013) ....................................................... 23

Hill v. Le,
        No. 3:17-cv-250-SI, 2021 U.S. Dist. LEXIS 183290
        (D. Or. Sep. 24, 2021) ................................................................. 18

Hopson v. Cheltenham Twp.,
        1990 WL 102883 (E.D. Pa. 1990) ................................................. 34

Iko v. Galley,
        Civil Action No. DKC 2004-3731, 2007 WL 9758426,
        2007 U.S. Dist. LEXIS 106484 (D. Md. Sep. 17, 2007) ................ 36

Iko v. Shreve,
        535 F.3d 225 (4th Cir. 2008) ....................................................... 29

Johnson v. Meadows,
        No. 22-7175, 2024 WL 4037078, 2024 U.S. App. LEXIS 22422
        (4th Cir. Sep. 4, 2024) ................................................................ 26

Jones v. Harrison,
        No. 4:12-CV-90-D, 2014 WL 3644706
        (E.D.N.C. July 22, 2014) ............................................................. 41

Jones v. Millspaugh,
        No. 4:19-cv-00164-TWP-DML,
        2021 U.S. Dist. LEXIS 129126 (S.D. Ind. July 12, 2021) ......... 40-41

Jones v. Owens-Corning Fiberglass Corp.,
    69 F.3d 712 (4th Cir. 1995) ...................................................... 15-16

Joyce v. Town of Tewksbury,
    112 F.3d 19 (1st Cir. 1997) ......................................................... 49

King v. Riley,
    76 F.4th 259 (4th Cir. 2023) ................................................. passim

Kisela v. Hughes,
    138 S. Ct. 1148 (2018) .............................................................22-23

Lech v. Goeler,
    92 F.4th 56 (1st Cir. 2024) ........................................................ 36

Lore v. Wilkes,
    No. 1:12CV165, 2013 U.S. Dist. LEXIS 156862
    (M.D.N.C. Nov. 1, 2013) ............................................................ 41

Maciariello v. Sumner,
    973 F.2d 295 (4th Cir. 1992), cert. denied,
    506 U.S. 1080 (1993) .................................................................. 23

McDuffie v. Housey,
    No. 9:20-cv-03131-MBS-MHC, 2022 U.S. Dist. LEXIS 184950
    (D.S.C. May 12, 2022) ................................................................ 42

Meyers v. Baltimore County, Md.,
    713 F.3d 723 (4th Cir. 2013) ...................................................... 22

Monell v. New York City Dept. of Social Services,
    436 U.S. 658 (1978) ............................................................. passim

Mullenix v. Luna,
    577 U.S. 7, 136 S. Ct. 305 (2015) ...........................................22-24

Parrish v. Cleveland,
    372 F.3d 294 (4th Cir. 2004) ...................................................... 29

Pearson v. Callahan,
    555 U.S. 223 (2009) ................................................................... 22

Peterson v. Midgett,
    140 F. Supp. 3d 490 (E.D.N.C. 2015) .............................................. 41

Pfaller v. Amonette,
    55 F.4th 436 (4th Cir. 2022) ..................................................... 42-43

Resnick v. Hayes,
    213 F.3d 443 (9th Cir. 2000) .......................................................... 18

Revis v. Meldrum,
    489 F.3d 273 (6th Cir. 2007) .......................................................... 48

Rich v. Bruce,
    129 F.3d 336 (4th Cir. 1997) .......................................................... 29

Ridpath v. Board of Governors Marshall Univ.,
    447 F.3d 292 (4th Cir. 2006) .......................................................... 22

Rivas-Villegas v. Cortesluna,
    595 U.S. 1, 142 S. Ct. 4 (2021) ...................................................... 24

Robles v. City of Fort Wayne,
    113 F.3d 732 (7th Cir. 1997) .......................................................... 49

Ruark v. Drury,
    21 F.3d 213 (8th Cir. 1994) ............................................................ 36

Saucier v. Katz,
    533 U.S. 194 (2001) ............................................................. 21-22, 38

Sherman v. Russell,
    No. 7:11CV00513, 2011 U.S. Dist. LEXIS 137435
    (W.D. Va. Nov. 30, 2011) ............................................................... 18

Short v. Hartman,
    87 F.4th 593 (4th Cir. 2023) cert. denied,
    144 S. Ct. 2631, 219 L. Ed. 2d 1269 (2024) ............................... 25-26

Slattery v. Rizzo,
    939 F.2d 213 (4th Cir. 1991) .......................................................... 23

Sledge v. Kooi,
    564 F.3d 105 (2nd Cir. 2009)........................................................ 42

Smith v. Atkins,
    777 F. Supp. 2d 955 (E.D.N.C. 2011) ........................................... 41

Stafford v. Barker,
    129 N.C. App. 576, 502 S.E.2d 1, rev. denied,
    348 N.C. 695 (1998) ...................................................................... 51

Stoneman v. Thompson,
    No. CIV. 3:03CV716, 2005 U.S. Dist. LEXIS 47841,
    2005 WL 3881432 (E.D. Va. Apr. 19, 2005) aff'd,
    142 F. App'x 167 (4th Cir. 2005) ............................................... 41-42

Swan by Carello v. Daniels,
    923 F. Supp. 626 (D. Del. 1995) .................................................... 33

Szabla v. City of Brooklyn Park, Minnesota,
    486 F.3d 385 (8th Cir. 2007) ...................................................... 47-48

Taylor v. Barkes,
    575 U.S. 822 (2015) ....................................................................... 43

Tilmon v. Prator,
    368 F.3d 521 (5th Cir. 2004) ........................................................ 18

White v. Pauly,
    137 S. Ct. 548 (2017) ..................................................................... 38

Whitnack v. Douglas Cty.,
    16 F.3d 954 (8th Cir. 1994) .......................................................... 18

Williamson v. City of Virginia Beach,
    786 F. Supp. 1238 (E.D. Va. 1992), aff'd,
    991 F.2d 793, 1993 WL 127961 (4th Cir. 1993)............................ 49

Williams v. City of Lancaster, Pa.,
    639 F. Supp. 377 (E.D. Pa. 1986) ................................................. 34

Wilson v. Layne,
    141 F.3d 111 (4th Cir. 1998) ...................................................... 23

Wood v. Moss,
    572 U.S. 744 (2014) ...................................................................... 21

Young v. City of Fulton,
    160 F.3d 899 (2nd Cir. 1998)..................................................... 48-49

Young v. City of Mount Ranier,
    238 F.3d 567 (4th Cir. 2001) ...................................................... 29

**Statutes:**

21 U.S.C. § 841(a)(1)........................................................................... 5

21 U.S.C. § 841(b)(1)(C)...................................................................... 5

28 U.S.C. § 1291 ................................................................................. 2

28 U.S.C. § 1331 ................................................................................. 2

42 U.S.C. § 1983 ........................................................................ passim

N.C. Gen. Stat. § 58-76-5 ................................................................ 51

**Constitutional Provisions:**

U.S. Const. amend. VIII................................................................ passim

U.S. Const. amend. XIV ............................................................... passim

**Rules:**

Fed. R. Civ. P. 56............................................................................. 14

Fed. R. Civ. P. 56(a)........................................................................ 15

## JURISDICTIONAL STATEMENT

This appeal arises out of two summary judgment orders by the District Court, which primarily involve 42 U.S.C. § 1983 ("Section 1983") claims of deliberate indifference to the medical needs and safety of the decedent Maurice King ("Decedent" or "King") during his confinement at the Orange County Detention Center ("OCDC"), a jail located in central North Carolina. In its first Order, the District Court granted summary judgment for non-appealing defendants, including Orange County, but denied summary judgment for Orange County Sheriff Charles Blackwood ("Sheriff Blackwood") and Travelers Casualty and Surety Company of America in its capacity as the holder of Sheriff's surety bond ("Travelers or the "Sheriff's surety"), but deferred its ruling as to whether Defendants William D. Berry, Jr. ("Berry") and Thomas A. Linster, III ("Linster") were entitled to qualified immunity and summary judgment. (JA1660-1667.) On February 13, 2025, the District Court issued its Memorandum Opinion and Order, wherein it denied summary judgment and qualified immunity for Defendants Berry and Linster. (JA1668-1677.) Sheriff Blackwood, Travelers, Berry, and Linster (collectively "Defendants")

timely filed a Notice of Appeal the very next day, on February 14, 2025. (JA1678.)

The District Court had jurisdiction over the underlying action pursuant to 28 U.S.C. § 1331 in light of the Section 1983 claims, which arise under the Eighth Amendment of the United States Constitution, incorporated to the state of North Carolina by the Fourteenth Amendment. It is well-settled that this Court has jurisdiction over the appeal of officers Berry and Linster in their respective individual capacities pursuant to 28 U.S.C. § 1291, because the District Court's Order, denying these defendants' motion for summary judgment on the basis of qualified immunity, is immediately appealable, regardless of whether the trial court relies on any issues of fact in denying qualified immunity. See, e.g., Brown v. Gilmore, 278 F.3d 362 (4th Cir. 2002). In addition, as set forth in detail in the Defendant-Appellants' Response to Plaintiff's Partial Motion to Dismiss Appeal (Doc. 18), the Court should exercise pendent appellate jurisdiction over the appeal as to Sheriff Blackwood in his official capacity and Travelers. See, e.g., Anderson v. Caldwell Cty., 524 F. App'x 854, 859 (4th Cir. 2013) (unpublished); Altman v. High Point, 330 F.3d 194, 207 fn. 10 (4th Cir. 2003).

## STATEMENT OF ISSUES

1.      Whether, since the Decedent plead guilty to federal crimes but was awaiting sentencing at the time of the incident, the District Court erred in analyzing Plaintiff's Section 1983 claims under the Fourteenth Amendment, which is reserved for pretrial detainees, as opposed to the Eighth Amendment, which applies to convicted persons.

2.      Whether—viewing the facts in the light most favorable to the Plaintiff and accepting the District Court's recitation as to the facts and any issues of fact—the District Court erred in ruling that there is a triable issue of whether Berry and/or Linster violated Decedent's constitutional rights for purposes of individual liability under Section 1983 and in denying qualified immunity.

3.      Whether—viewing the facts in the light most favorable to the Plaintiff and accepting the District Court's recitation as to the facts and any issues of fact—the District Court erred in ruling that there is a triable issue of whether Berry and/or Linster violated Decedent's clearly established rights for purposes of individual liability under Section 1983 and in denying qualified immunity.

4.     Whether—viewing the facts in the light most favorable to the Plaintiff and accepting the District Court's recitation as to the facts and any issues of fact—the District Court erred in ruling that there is a triable issue of whether Sheriff Blackwood can be held liable in his official capacity for purposes of Section 1983 liability under <u>Monell</u>.

5.     Whether—viewing the facts in the light most favorable to the Plaintiff and accepting the District Court's recitation as to the facts and any issues of fact—the District Court erred in denying summary judgment as to the claim against Sheriff Blackwood and Travelers on the Sheriff's bond.

## <u>STATEMENT OF THE CASE</u>

### I.     Statement of Facts.

In the light most favorable to the Plaintiff, the facts of this case are as follows. As described *infra*, these facts still fall short of what is required to forecast a violation of the U.S. Constitution:

Decedent was booked in the OCDC on November 14, 2019, held as a federal prisoner pursuant to an agreement between the U.S. Marshals Service and the OCDC; at the time, King was not a pretrial detainee, nor was he entitled to a presumption of innocence. Instead, King had

plead guilty to a federal drug conviction and was awaiting formal sentencing. (See Amend Compl. ¶ 52, JA40-41; see also Blackwood Dep., Dist. Ct. Doc. #107-5 at 202; 1:18CR202-NCT-1 (M.D.N.C.) (adjudication of guilt on February 4, 2020, following Decedent's guilty pleas to three counts of distribution of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and (b)(l)(C).)

King was moved from K-cell to B-Pod—the location where the incident at issue occurred—on November 24, 2019. (Blackwood Decl., Exhibit B, King Inmate Log, JA592-593.) King was housed in B-Block without issue starting in November of 2019, for over three months before the March 4, 2020, incident. (Id.) While this is not discussed at all in the District Court's summary judgment order (JA1668-1677), there is no forecast of evidence whatsoever on the record that King complained about his housing classification, that King asked to be moved to another block, that King felt afraid or fearful for his safety in B-Block, that King had been threatened or in any altercations while in B-Block, or that King and Mr. Tyler Grantz had any prior history or disputes at the OCDC. As reflected in their Declarations, none of the detention officers at the OCDC were placed on notice that King was in

any danger, that King's safety was at risk, that King would get into a fight with Grantz or any other inmate, or that King otherwise would be assaulted. (JA794-815.) In short, the Individual Officers had no reason to know that King—who had been safely housed in B-Block without incident for months—should have been moved to another cell block or that some other action should have been taken before March 4, 2020, nor did the Individual Defendants have reason to believe that there was a likelihood of King being assaulted that day.

Regarding the moments leading to the March 4, 2020, assault, the video footage submitted to this Court (JA Volume V, *Digital Media*, 1–14) shows that King motions for Grantz to go to King's cell, and that—after Grantz follows King to the cell at King's direction—the incident lasts only a few minutes. Specifically, the video shows the following timeline (the time-stamps are 54 minutes fast, and the below times reference actual times accounting for the 54-minute issue):

a.   Mr. King and Mr. Grantz converse in the common area downstairs at approximately 6:34 P.M. after which Mr. King motions to Mr. Grantz and invites Mr. Grantz to follow him to cell 215;

b.    Mr. Grantz follows Mr. King upstairs to cell 215, and an altercation occurs in the doorway of cell 215 at approximately 6:39 P.M.;

c.    Another inmate, Darryl Bradford, enters cell 215 and closes the door;

d.    At approximately 6:45 P.M., there are three inmates standing outside cell 215, specifically, Inmate Bradford, Inmate Linwood Stephens, and Inmate Salters.  Stephens looks into the window of cell 215 at different times.

e.    At approximately 6:43 P.M., Officer Berry prepares to deliver a book to an inmate, which requires Officer Linster to stay in the annex control room to open the cell pod doors for Officer Berry;

f.    At approximately 6:45 P.M., Mr. Grantz exits cell 215;

g.    At approximately 6:47 P.M., Officer Berry conducts a supervisory round;

h.    At approximately 6:48 P.M., an inmate opens and closes the door to cell 215;

i.     At approximately 6:49 P.M., inmate Stephens motions for Officer Berry to follow him and walks in between Officer Berry and cell 215;

j.     At approximately 7:19 P.M., Officer Linster conducts a supervisory round;

k.     At approximately 7:47 P.M., Officer Linster conduct another supervisory round during which inmate Bradford walks in between Linster and cell 215;[1]

l.     At approximately 7:49 P.M., Officer Linster stops and looks back toward cell 215;

m.     At approximately 7:50 P.M., Officer Linster returns to the annex control room;

---

[1] While the written OCDC policy during March 4, 2020, called for detention officers to conduct rounds 4 times per hour (approximately every 15 minutes), the practice of the OCDC at the time was for detention officers to conduct rounds twice per hour (approximately every 30 minutes), as is consistent with North Carolina administrative regulations. *See* 10A NCAC 14J .0601 ("SUPERVISION. (a) A jail shall have an officer make supervision rounds and observe each inmate at least two times within a 60 minute time period on an irregular basis with not more than 40 minutes between round….").

n. At approximately 7:50 P.M., Officers Berry and Linster appear to be looking at the camera monitor and utilizing the intercom;

o. At approximately 8:10 P.M., Officer Berry exits the nurse's office with an object that appears to be an inhaler;

p. At approximately 8:13 P.M., Officer Berry enters cell 215;

q. At approximately 8:17 P.M., Officer Berry exits cell 215;

r. At approximately 8:20 P.M., Officer Berry and Officer Linster are in the annex control room, and Officer Linster is on the phone;

s. At approximately 8:24 P.M., Officer Berry enters the jail hallway with a wheelchair;

t. At approximately 8:27 P.M., Officer Berry and Officer Linster enter King's cell, cell 215;

u. At approximately 8:45 P.M., Officer Berry enters the jail hallway with a nurse;

9

v.    At approximately 8:45 P.M., Officer Berry enters B-Pod with an orange jumpsuit;

w.    At approximately 8:53 P.M., Officer Berry, Officer Gomez, and Officer Linster carry Mr. King out of cell 215; and

x.    At approximately 8:55 P.M., Officer Gomez leaves B-Pod to get a wheelchair for Mr. King, and Officer Linster wheels Mr. King out of the jail hallway toward the booking area.

(See Blackwood Decl. passim (citing specific events based on the review of video footage submitted to the Court), JA210-213; Digital Media, JA Volume V.)

As noted in the Declarations of Berry and Linster, Berry and Linster knew that King had asthma, Berry provided King with an inhaler at King's request, and Berry and Linster each perceived that King was having an asthma attack, since that is what King reported to Berry. (JA794-815.) Since there is oxygen available at the OCDC (as reflected in the Medical Plan/agreement with Southern Health Partners), they transported King to the nurse's station to address the perceived asthma attack. (Berry Decl. ¶¶ 30-38, JA800-801; Linster Decl. ¶¶ 29-38, JA811-812.)

Crediting the District Court's statements regarding the key facts it considered relevant to its denial of summary judgment for the Individual Defendants, the District Court relied on five key points: (1) "[The Individual Officers] knew King was in a high-security segregation pod with violent inmates and a high risk of inmate-on-inmate violence; (2) "[The Individual Officers] knew it was important for detainee safety to look into cells on a regular basis and to keep an eye on the pod through video monitors in the control room" and they did not do so, conducting improper supervision rounds; (3) "[The Individual Defendants] knew detainees had a constitutional right to be supervised in order to protect them from known risks of assault and a constitutional right to have emergency medical needs met with a timely response" and failed to supervise the inmates from the control room or during rounds; (4) "They knew they had repeatedly failed to look into Mr. King's cell during their rounds despite clear policy requiring them to do so…. They knew they were not monitoring the pod common area through windows or video cameras, again in violation of policy[;]" and (5) They heard a concerning sound coming from King's cell and did not check on King until approximately 20 minutes thereafter. (JA1668-

1677.) As noted below, <u>none</u> of these factual disputes or recitations warranted the District Court's denial of summary judgment, and its summary judgment orders should be reversed.

## II.     Relevant Procedural Posture.

This appeal arises out of two separate summary judgment orders of the District Court. In its first Order, the District Court granted summary judgment for non-appealing defendants, including Orange County, but denied summary judgment for Sheriff Charles Blackwood and Travelers, but deferred its ruling as to whether the Individual Officers were entitled to qualified immunity and summary judgment. (JA1660-1667.) On February 13, 2025, the District Court issued its Memorandum Opinion and Order, denying summary judgment and qualified immunity for Defendants Berry and Linster. (JA1668-1677.) The Defendants timely filed a Notice of Appeal the very next day, on February 14, 2025. (JA1678.)

In the District Court's Summary Judgment Order pertaining to Defendants Berry and Linster, the District Court erroneously rejected the recommendation of the Magistrate Judge that Defendants Berry and Linster should be granted summary judgment on qualified

immunity grounds. (See Dist. Ct. Docket No. 124 at 18-33, JA1532-1547.) Furthermore, as set forth in Defendants' Objections (JA1605-1618), the District Court erroneously analyzed the Section 1983 claims regarding the Decedent—who was not a pretrial detainee but instead a federal prisoner being held at the OCDC who had plead guilty to drug-related crimes but was not yet sentenced—under the Fourteenth Amendment rather than the Eighth Amendment for purposes of analyzing whether the Plaintiff forecasted evidence of a constitutional violation. (See JA1606-1609.) For the reasons stated herein, both of the District Court's summary judgment orders should be reversed.

## SUMMARY OF ARGUMENTS

Even in the light most favorable to the Plaintiff, it is undisputed that neither Berry nor Linster violated Decedent's constitutional rights, much less any clearly-established rights. It is undisputed that the Decedent was housed in OCDC for months without any issue, without requesting to be moved, without reporting any threats, and without anything that would indicate to the Individual Defendants that he was at risk of being assaulted or injured. It is also undisputed that the Decedent had asthma issues while at the OCDC, and the Individual

Officers perceived that he needed an inhaler and not any emergency medical care when they first heard labored breathing in his cell. At best, the District Court heavily relied on the Individual Officers' failure to stop and look into cells while conducting supervision rounds, violations of OCDC or state policy regarding conducting rounds, not looking at inmates while in the control room, and a mere 20-minute period that elapsed from the time the Individual Officers heard non-emergent sounds coming from Decedent's cell. This Court has rejected similar arguments and has held that such facts—which amount to policy violations and non-supervision rather than constitutional wrongs—do not meet the exacting standards required to raise a genuine issue that the Individual Officers were deliberately indifferent. The Court should do the same here and reverse the District Court's orders on summary judgment as they pertain to the Defendants.

**ARGUMENT**

## I.  <u>Standard of Review</u>

The summary judgment standard of review under Rule 56 of the Federal Rules of Civil Procedure is well established. Summary judgment is appropriate when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has emphasized that, at the summary judgment stage, it is not the burden of "the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Instead, . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

A plaintiff cannot defeat summary judgment by attempting to assert credibility attacks or by asking the Court to disbelieve the Defendants. Specifically, a "nonmovant may not defeat a motion for summary judgment 'without offering concrete evidence from which a reasonable juror could return a verdict in his favor [nor] by merely asserting the jury might, and legally could,' disbelieve the movant." First Data Merch. Servs. Corp. v. SecurityMetrics, Inc., 672 F. App'x 229, 234 (4th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)); see also Jones v. Owens-Corning Fiberglass

15

Corp., 69 F.3d 712 (4th Cir. 1995). As set forth below, the District Court erred as a matter of law in denying Defendants' motions for summary judgment.

## II. **The District Court Erred in Applying the Fourteenth Amendment's Purely Objective Analysis in Addressing the Section 1983 Claims of a Decedent Who Plead Guilty to Federal Drug Crimes.**

The District Court erred when it ruled that King was entitled to the Fourteenth Amendment analysis—reserved for pretrial detainees—based on the technicality that Decedent had not been formally sentenced prior to the incident. It improperly applied the Fourteenth Amendment standard to Plaintiff's Monell claim in allowing it to proceed against Sheriff Blackwood, and did the same in determining whether the Individual Defendants violated Plaintiff's constitutional rights—this error tainted both the qualified immunity analysis and the Monell analysis, placing both summary judgment orders in question. (See JA1661 (relying on Fourteenth Amendment in analyzing Monell claims against Sheriff Blackwood); JA1669 (ruling as to the Individual Defendants that "the evidence is sufficient to show a Fourteenth Amendment violation").)

A prisoner who has entered a guilty plea is <u>not</u> treated the same as a pretrial detainee for purposes of Section 1983 claims, and the claims of a convicted prisoner are analyzed under a vastly different regime than that of pretrial detainees. <u>See, e.g.,</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). The United States Supreme Court has explained that "a plea of guilty is more than an admission of conduct; <u>it is a conviction.</u>" <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969) (emphasis added). A guilty plea changes the status of a criminal defendant to a convict and can "end[]" pretrial detainee status, as noted by the Supreme Court in <u>Gerstein</u>, which addressed class certification of alleged pretrial detainees. <u>Gernstein v. Pugh</u>, 420 U.S. 103, 110 n.11 (1975).

Following this straightforward language from the Supreme Court, federal courts have consistently ruled that those who—like the Decedent—have pleaded guilty are subject to the Eighth Amendment, which prohibits cruel and unusual punishment, not the Fourteenth Amendment. While there is no Fourth Circuit precedent on point, the trend in both U.S. Courts of Appeal and District Courts is to apply the Eighth Amendment standard to post-plea, pre-sentenced prisoners. <u>See</u>,

e.g., Tilmon v. Prator, 368 F.3d 521, 524 (5th Cir. 2004) ("We hold that a prisoner who has been convicted but has not yet been sentenced has the same status as a sentenced prisoner for purposes of analyzing whether the prisoner has a liberty interest in having certain procedural protections apply before being punished in connection with prison disciplinary proceedings."); Berry v. Muskogee, 900 F.2d 1489, 1493 (10th Cir. 1990) ("We see no reason to treat incarcerated persons whose guilt has been adjudicated formally but who await sentencing like pretrial detainees, who are detained primarily to ensure their presence at trial and who cannot be punished.") (emphasis added); Whitnack v. Douglas Cty., 16 F.3d 954, 956 (8th Cir. 1994) (distinguishing applicable standards, noting that "Arellano was a convicted prisoner awaiting sentencing, and Whitnack was a pretrial detainee awaiting trial"); Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) ("Precedent from other circuits supports treating Plaintiff as a sentenced inmate" where "Plaintiff, although convicted, had not been sentenced before being placed in segregated housing."); Hill v. Le, No. 3:17-cv-250-SI, 2021 U.S. Dist. LEXIS 183290, at *19-21 (D. Or. Sep. 24, 2021) (collecting cases); Sherman v. Russell, No. 7:11CV00513, 2011 U.S. Dist. LEXIS 137435, at *8 (W.D. Va. Nov. 30, 2011) ("Moreover, court

records indicate that on August 3, 2011, Sherman entered a guilty plea to two counts of the federal criminal indictment <u>and is currently scheduled for sentencing</u> in January 2012. Although his conviction does not extinguish his liberty interests, <u>it does change the nature of his liberty interests</u>.") (emphasis added); <u>Hakim v. Warden</u>, Civil Action No. ELH-22-168, 2024 U.S. Dist. LEXIS 38843, at *4 (D. Md. Mar. 5, 2024) ("Additionally, the Amended Petition is now moot. This is because Hakim pleaded guilty and he is no longer a pretrial detainee seeking the dismissal of the charges against him, but rather a post-conviction inmate . . . ."); <u>Grant v. N.Y.C. Dep't of Corr.</u>, 94 Civ. 2793 (CSH), 1996 U.S. Dist. LEXIS 312, at *8-9 (S.D.N.Y. Jan. 11, 1996) ("As a pretrial detainee <u>prior to his guilty plea</u>, plaintiff was entitled to the protection of the due process clause of the Fourteenth Amendment.") (emphasis added); <u>Fitzpatrick v. Las Vegas Metro. Police Dep't</u>, No. 2:17-cv-01886-JAD-BNW, 2020 U.S. Dist. LEXIS 19852, at *31 (D. Nev. Feb. 3, 2020) (rejecting argument that "it is the Fourteenth Amendment that applies because Bowling remained a pretrial detainee while he was awaiting sentencing[,]" stating, "Because [plaintiff] pleaded guilty, he was no longer a pretrial detainee, and it is the Eighth Amendment that supplies the standard for the constitutional claims here."); <u>Ash v.</u>

Garden, No. 21-CV-1329-JPG, 2024 U.S. Dist. LEXIS 55534, at *2 n.2 (S.D. Ill. Mar. 27, 2024) ("The Plaintiff was a pretrial detainee from his arrival at the jail until his plea of guilty on March 22, 2022.") (emphasis added).

The District Court's assessment that Decedent, who pleaded guilty to a federal criminal offense, is akin to a pretrial detainee, does not align with the policy justifications which provide for additional protections and non-punishment of pretrial detainees, nor does it align with the Supreme Court's unequivocal holding that a guilty plea "is a conviction." Boykin, 395 U.S. at 242. It would defy reason and precedent to afford a post-plea offender the same protections as a pretrial detainee who has not plead guilty or had an adjudication as to his criminal status. The non-binding cases cited in support of this legal conclusion do not overcome the language of the Supreme Court. Adopting the District Court's erroneous decision would inappropriately afford heightened protection to persons whose status as a pretrial detainee has, by their own admission of guilt, "ended." Gernstein, 420 U.S. at 110 n.11.

For the foregoing reasons, the Plaintiff's claims should have been analyzed under the Eighth Amendment, including the Monell claims

and the claims against the Individual Defendants. As a result of this significant legal error, the District Court's summary judgment orders should be reversed.

## III.   **The District Court Erred in Denying Each of the Individual Officers Qualified Immunity.**

### A.   **Overview of Qualified Immunity.**

A court required to rule upon the qualified immunity issue should first consider this threshold question:   "Taken in the light most favorable to the party asserting the injury, do the facts ... show [that] the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001); Wood v. Moss, 572 U.S. 744, 757 (2014).  The plaintiff bears the burden of proof of proving that a constitutional violation occurred. Henry v. Purnell, 501 F.3d 374, 377-8 (4th Cir. 2007); Crawford-El v. Britton, 523 U.S. 574, 588-589 (1998).  If, in the light most favorable to plaintiff, there has been no constitutional violation, then the analysis ends:   the officer is entitled to qualified immunity. Saucier, supra.

However, if the facts could establish a constitutional violation, the Court must analyze whether the constitutional right alleged to have been violated was "clearly established" at the time of the officer's

actions.    Id.[2]    In considering this second prong of the Saucier framework, the key issue is whether the law "gave the officials 'fair warning' that their conduct was unconstitutional." Ridpath v. Board of Governors Marshall Univ., 447 F.3d 292, 313 (4th Cir. 2006).  In order for an officer to lose the protection of qualified immunity, existing precedent at the time of the occurrence must show that it was "beyond debate" that the officer's specific actions violated the Constitution. Mullenix, 136 S. Ct. at 308-09; Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (per curiam); City and County of San Francisco, Calif. v. Sheehan, 135 S. Ct. 1765, 1774 (2015).  Thus, the inquiry into whether the right was clearly established must "be undertaken in light of the specific context of the case" and "not as a broad general proposition ...." Saucier, supra.  Also, "[b]ecause the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." Kisela v. Hughes, supra; see also Meyers v. Baltimore County, Md., 713 F.3d 723, 731 (4th Cir. 2013).

---

[2] In Pearson v. Callahan, 555 U.S. 223, 235-36 (2009), the Supreme Court granted courts discretion over the order of application of the Saucier analysis, while recognizing that conducting the analysis in order is often beneficial.  Id.

Officers are entitled to qualified immunity "if a reasonable officer possessing the same information <u>could have believed</u> that his conduct was lawful." <u>Slattery v. Rizzo</u>, 939 F.2d 213, 216 (4th Cir. 1991) (emphasis added). The "safe harbor" of qualified immunity "ensures that officers will not be liable for bad guesses in gray areas but only for transgressing bright lines." <u>Doe v. Broderick</u>, 225 F.3d 440, 453 (4th Cir. 2000) (internal quotations omitted); <u>Wilson v. Layne</u>, 141 F.3d 111, 114 (4th Cir. 1998) (en banc); <u>Hill v. Crum</u>, 727 F.3d 312, 321-22 (4th Cir. 2013); <u>Maciariello v. Sumner</u>, 973 F.2d 295, 298 (4th Cir. 1992), <u>cert. denied</u>, 506 U.S. 1080 (1993). Thus, an officer will be entitled to qualified immunity unless "every reasonable official would have understood that what he [was] doing" violated the Constitution. <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2083 (2011). An inquiry under the qualified immunity analysis must be particularized and fact-specific. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640-41 (1987). In cases such as the instant case, "in which the result depends very much" on the specific factual scenario, the officers will be entitled to qualified immunity "unless existing precedent 'squarely governs' the specific facts at issue." <u>Kisela</u>, 138 S. Ct. at 1153 (quoting <u>Mullenix</u>, 136 S. Ct. at

309). The United States Supreme Court has emphasized the continued vitality of the qualified immunity doctrine in the recent cases of <u>City of Tahleqah, Oklahoma v. Bond,</u> 595 U.S. 9, 142 S. Ct. 9 (2021) and <u>Rivas-Villegas v. Cortesluna,</u> 595 U.S. 1, 142 S. Ct. 4 (2021). This Court has also recently emphasized the importance and assessment of the "clearly established" prong of the qualified immunity analysis, stating:

> We do not decide whether a right is clearly established like a customer in a buffet line selectively picking items and declining others to come up with the ideal meal. And the reason for this should be clear. The second prong of the qualified immunity analysis examines if the law fairly warned an officer that his conduct violated the Constitution. Mixing and matching parts of dissimilar decisions does not provide fair warning.

<u>Atkinson v. Godfrey</u>, 100 F.4th 498, 508 (4th Cir. 2024).

## B. Legal Analysis of Deliberate Indifference Claims in the Context of Assaults, Inmate Safety.

Here, even in the light most favorable to the Plaintiff, it is undisputed that Plaintiff none of the Defendants or OCDC detention officers knew or had reason to know that the Decedent would be assaulted at the OCDC or that his safety was at risk, nor that he had an obvious medical emergency which needed swift attention. It is also

undisputed that King was housed in B-Block without issue since November 24, 2019, over three months before the March 4, 2020, incident, without lodging any complaints against the inmates involved in the incident, without asking to be moved to another cell block, and without otherwise providing any indication whatsoever that he was in fear of his life or otherwise unsafe. Additionally, it is undisputed that the assault in question was not caused by the actions of Sheriff Blackwood, the conditions at OCDC, or any action of any Defendant named in this case. Thus, Plaintiff's failure to protect claim should not have survived the summary judgment stage.

"It is beyond debate that a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." <u>Gordon v. Schilling</u>, 937 F.3d 348, 356 (4th Cir. 2019) (cleaned up). In order to establish an Eighth Amendment deliberate indifference claim, "the plaintiff is required to prove an objective component and a subjective component." <u>Id.</u>; <u>Farmer</u>, 511 U.S. at 832. "The objective element requires an objectively serious medical condition." <u>Short v. Hartman</u>, 87 F.4th 593, 612 (4th Cir. 2023) (internal quotation marks omitted), <u>cert. denied</u>, 144

S. Ct. 2631, 219 L. Ed. 2d 1269 (2024). "A condition is objectively serious if it is diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotation marks omitted).

The subjective component "requires that the prison official acted with deliberate indifference to inmate health or safety, meaning that the official had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Id. (internal quotation marks omitted); Johnson v. Meadows, No. 22-7175, 2024 WL 4037078, 2024 U.S. App. LEXIS 22422, at *7 (4th Cir. Sep. 4, 2024) (affirming summary judgment on deliberate indifference claims where there was insufficient evidence that defendants "knew, or should have recognized, that *immediate medical assistance was obviously necessary*") (emphasis added).

"Deliberate indifference,' as the Farmer Court explained, is a culpable mens rea that requires proof that the prison official subjectively "*kn[e]w* of and *disregard[ed]* an excessive risk to inmate health or safety." 511 U.S. at 837 (emphasis added). Thus, to show that a prison official was deliberately indifferent, the prisoner must show

26

that the official "***consciously disregard[ed]*** a substantial risk of serious harm," which the Court adopted from the definition of criminal recklessness in the Model Penal Code. Id. at 839 (emphasis added) (cleaned up).

In light of this analysis, in the context of inmate-on-inmate assaults, deliberate indifference claims should not survive the summary judgment stage absent actual knowledge that an inmate was seriously assaulted and that immediate medical assistance is needed, or actual knowledge that the specific inmate was being targeted and at a specific risk of being assault (for example, due to reported threats to the inmates, requests by the inmate to be moved, prior altercations or assaults involving that specific inmate). See, e.g., Cox v. Quinn, 828 F.3d 227, 237 (4th Cir. 2016) (subjective prong met where plaintiff, *inter alia*, "submitted numerous 'blue slips' complaining that he was being threatened and robbed by [other inmates]; [plaintiff] repeatedly informed the appellants that he feared for his safety and wished either to be moved from the pod or to have the other inmates moved; and [plaintiff] expressly requested that the correctional officers not discuss his concerns with" the other inmates). A general risk of harm is wholly

27

insufficient to meet the high standard enunciated by the <u>Farmer</u> Court, and a showing of negligence is not enough—instead, there must be a forecast of evidence that the official had "actual knowledge of an excessive risk to the [inmate's] safety." <u>Danser v. Stansberry</u>, 772 F.3d 340, 347 (4th Cir. 2014).

As noted *supra*, the Eighth Amendment's subjective prong applies in the Court's determination of whether a constitutional violation occurred. However, even assuming *arguendo* that the Fourteenth Amendment's analysis applies in determining whether the Individual Officers violated Decedent's constitutional rights, qualified immunity is still appropriate here, since the purely objective standard still requires a level of requisite knowledge not present, and the Fourteenth Amendment in no way imposes a negligence standard. <u>See</u> <u>Carmona v. Martin</u>, 2024 WL 4490695, at *2 (4th Cir. Oct. 15, 2024) (affirming summary judgment, noting: "It is undisputed that Carmona vaguely complained to Appellees that he thought he would be attacked if he was assigned to B Block. But it is also undisputed that, when he was questioned about this alleged threat, Carmona could not identify any specific persons who intended to harm him. On the facts of this case, we

conclude that Carmona failed to adequately establish that 'a reasonable offic[ial] in the circumstances would have appreciated the high degree of risk involved' in placing him in B Block, 'making the consequences of [Appellees'] conduct obvious.'") (quoting <u>Castro v. County of Los Angeles</u>, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).

## C. Legal Analysis of Deliberate Indifference Claims in the Context of Medical Needs.

To prevail on a Section 1983 claim for "deliberate indifference" against the individual defendants, plaintiff must show that (1) the decedent had an objectively serious medical need; (2) each individual defendant subjectively recognized that the decedent had an objectively serious medical need; and (3) each individual defendant acted with deliberate indifference to the decedent's objectively serious medical need by acting in a way that each individual defendant subjectively recognized was inappropriate. <u>See</u>, <u>e.g.</u>, <u>Farmer</u>, 511 U.S. at 835-845; <u>Iko v. Shreve</u>, 535 F.3d 225, 241-242 (4th Cir. 2008); <u>Parrish v. Cleveland</u>, 372 F.3d 294, 302-309 (4th Cir. 2004); <u>Brown v. Harris</u>, 240 F.3d 383, 388-390 (4th Cir. 2001); <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 575-76 (4th Cir. 2001); <u>Grayson v. Peed</u>, 195 F.3d 692, 695-96 (4th Cir. 1999); <u>Rich v. Bruce</u>, 129 F.3d 336, 338-340 (4th Cir. 1997).

Plaintiff must forecast evidence regarding all three prongs, as to each defendant, in order to survive summary judgment. As noted below, Plaintiff has not done so.

> ### D. Each Individual Defendant is Entitled to Qualified Immunity Because They Did Not Violate Decedent's Constitutional Rights.

As is apparent in the District Court's Order, the lower court ignored the months leading up to the assault, during which King had no issues and did not raise any concerns to the Individual Defendants or any other OCDC Officers. The District Court instead focused on the following: (1) "[The Individual Officers] knew Mr. King was in a high-security segregation pod with violent inmates and a high risk of inmate-on-inmate violence." (2) [The Individual Officers] knew it was important for detainee safety to look into cells on a regular basis and to keep an eye on the pod through video monitors in the control room" and they did not do so, conducting improper supervision rounds; (3) "[The Individual Defendants] knew detainees had a constitutional right to be supervised in order to protect them from known risks of assault and a constitutional right to have emergency medical needs met with a timely response" and failed to supervise the inmates from the control room or

during rounds; (4) "They knew they had repeatedly failed to look into Mr. King's cell during their rounds despite clear policy requiring them to do so…. They knew they were not monitoring the pod common area through windows or video cameras, again in violation of policy[;]" and (5) They heard a concerning sound coming from King's cell and waiting approximately 20 minutes to head to King's cell thereafter. (JA1668-1677.)

Turning to the first key consideration, the Fourth Circuit—recognizing that jails and prisons may harbor unsafe persons and are not akin to other common areas of life—has repeatedly held that a general unsafe environment or pod is insufficient to establish knowledge/deliberate indifference on behalf of detention officers—what is required is knowledge of a specific risk to the victim. See, e.g., Carmona, 2024 WL 4490695, at *2 (affirming summary judgment even where the victim had "complained to Appellees that he thought he would be attacked if he was assigned to B Block"); Danser, 772 F.3d at 343-46 (noting that a general unsafe environment is insufficient where officer did not have requisite knowledge that an assault would occur, even where plaintiff was housed in "SHU" which "house[d] inmates

31

whom prison officials have determined need separation from the general inmate population, either because the inmate violated prison rules or because the inmate requires protective custody"). Thus, the District Court improperly relied on the fact that B-Block was a high-security area in denying the Individual Defendants qualified immunity.

Turning to the second, third, and fourth factual considerations by the District Court, it is made clear that the lower court erroneously denied qualified immunity for a failure to adequately supervise the Decedent or the block in which he was housed; for policy violations regarding how and when rounds should be conducted; and for failure to look into Decedent's cell or at the video screens and camera footage depicting B-Block during the incident. (JA1671-1672.) This is utterly insufficient to demonstrate deliberate indifference, and courts have consistently found that policy violations—including a failure to properly conduct rounds or supervise a dangerous cell block—do not amount to deliberate indifference.[3] (Id.)

---

[3] King v. Riley, 76 F.4th 259 (4th Cir. 2023) (hereinafter "Riley" to avoid confusion) is directly on point in this context but better fits into the "clearly established" argument, and is described in the next section.

Numerous courts across the country have held that a jailer's failure to strictly comply with observation rules does not amount to deliberate indifference, nor a deliberately indifferent policy. For instance, in <u>Swan by Carello v. Daniels</u>, 923 F. Supp. 626 (D. Del. 1995), parents of a prisoner who committed suicide brought a deliberate indifference claim against prison officials. Plaintiff argued that the jailers' failure to make security checks on the decedent every fifteen minutes as required by the Jail's policies, was deliberate indifference. <u>Id.</u> at 634. The jailers' failure to properly perform checks meant that they performed only half of their required security checks. <u>Id.</u> The district court held that these missing checks did not demonstrate deliberate indifference: "[w]hile they may not have conducted a check every fifteen minutes, and while the failure to do so might rise to the level of negligence, the facts do not support the conclusion that missing a number of checks during the day constitutes deliberate indifference." <u>Id.</u> at 636; <u>Estate of Pollard v. Hood County, Texas</u>, 579 Fed. Appx. 260, 266 (5th Cir. 2014) (jailers who were supposed to perform 15 minute observation checks, but did not follow that policy and exceeded the fifteen minute time period were negligent, but not deliberately

indifferent); <u>Goodman v. Kimbrough</u>, 718 F.3d 1325, 1332 (11th Cir. 2013) (stating that "failure to conduct the cell checks and head counts is negligence of the purest form" that does not justify liability under 42 U.S.C. § 1983); <u>Hale v. Tallapoosa Cnty.</u>, 50 F.3d 1579, 1582 (11th Cir. 1995) (a 150 minute gap between checks did not constitute deliberate indifference); <u>Williams v. City of Lancaster, Pa.</u>, 639 F. Supp. 377, 383–84 (E.D. Pa. 1986) (failure to check inmates every 30 minutes, although against regulations, did not constitute deliberate indifference because "even if one check were missed on a regular basis, plaintiff has failed to show how that hour-long gap is anything more than negligence" as "brief departure from the jail regulations does not automatically impinge upon prisoners' constitutional rights"); <u>Hopson v. Cheltenham Twp.</u>, 1990 WL 102883 at * 7 (E.D. Pa. 1990) (unpublished) (officer's "failure to perform timely cell-checks as required by the department policy does not amount to deliberate indifference, and can at worst be characterized as negligence" where officer skipped two 30–minute checks, leaving decedent unchecked for eighty minutes). Thus, the second, third, and fourth considerations by the District Court—all of which sound of non-supervision or failure to properly conduct

34

rounds—in no way amount to deliberate indifference which would allow for a denial of qualified immunity.

Finally, we address the Court's consideration that, in the light most favorable to the Plaintiff, the Individual Defendants heard "concerning sounds" coming from King's cell, that Linster went to the control room rather than King's cell when he first heard the concerning sounds (which were described by the District Court as "moans, groans, or labored breathing"), and waiting approximately 20 minutes before Berry went to King's cell thereafter to bring him an inhaler. (JA1668-1677.) The above still does not amount to deliberate indifference to Decedent's rights to receive medical care for an objectively serious medical need. There is no forecast of evidence that either Berry or Linster perceived or had any reason to know that, when they heard those sounds, King was suffering from an objectively serious medical need or an emergency requiring an immediate response. Instead, the evidence forecasted that the Individual Defendants at best believed King was having trouble breathing or that "he had asthma and was moaning," suspecting that he may have been injured in an assault, and waiting approximately twenty minutes to check on King. (JA1674)

Nothing in the record indicates that the Individual Defendants knew or should have been aware that King was suffering from a serious medical need which warranted immediate medical attention. Nor would a mere twenty minute delay amount to deliberate indifference as a matter of law when the Individual Defendants heard moaning, groaning, or potential breathing issues which they attributed to Decedent's asthma—not readily-apparent life-threatening injuries. See, e.g., Lech v. Goeler, 92 F.4th 56, 75 (1st Cir. 2024) (affirming summary judgment in case where there was a 20-minute delay in care, noting that "cases with shorter or comparable delays involved prison officials' knowledge of readily apparent life-threatening injuries"); Ruark v. Drury, 21 F.3d 213, 217-18 (8th Cir. 1994) (affirming summary judgment where there was a 20 minute delay in care, when jailors were unaware of the serious nature of the inmate's condition and that they had no knowledge their delay risked harm to the inmate); Iko v. Galley, Civil Action No. DKC 2004-3731, 2007 WL 9758426, 2007 U.S. Dist. LEXIS 106484, at *56 (D. Md. Sep. 17, 2007) ("[Defendant's] 20 minute delay in arriving at Decedent's cell was not unreasonable given that Officer Merling expressed no urgency in his request that [Defendant] look at

36

Decedent."). Additionally, as noted below, it is not clearly established that knowledge of labored breathing and a potential asthma attack would have constituted a serious medical emergency for purposes of the "clearly established" prong. Thus, this final consideration by the Court also did not justify the denial of qualified immunity for the Individual Defendants, nor do all of these consideration taken as a whole.

In summary, Plaintiff failed to forecast triable evidence that either Berry or Linster violated Decedent's constitutional rights. The District Court relied on non-supervision, rounds policies, and a 20-minute delay in checking on Decedent. This is insufficient to establish a constitutional violation, notwithstanding whether the analysis is conducted under the Eighth Amendment standard, or the purely objective test described by this Court in Carmona, supra, under the Fourteenth Amendment. Absent a constitutional violation, the qualified immunity analysis fails on the first prong, and the Individual Defendants are entitled to qualified immunity, summary judgment, and a reversal of the District Court's orders.

**E.    Each Individual Defendant is Also Entitled to Qualified Immunity Because They Did Not Violate Any Clearly Established Rights of the Decedent.**

Under the second <u>Saucier</u> prong, even assuming *arguendo* that the facts in the light most favorable to the Plaintiff established a constitutional violation, the Court must still analyze whether those facts clearly establish a constitutional violation. In order to be "clearly established," "existing precedent must have placed the statutory or constitutional question beyond debate." <u>White</u>, 137 S. Ct. at 551 (internal quotation marks omitted). Here, the District Court erroneously ruled that the Individual Defendants are not entitled to qualified immunity based on facts showing that, during the relevant time period during and after the assault of Decedent, they were not supervising the B-Block area and did not physically look into cells while conducting rounds, and did not look at B-Block or the video camera footage or control room screens so that they could observe Decedent in his cell. This view—which attempts to equate negligence to deliberate indifference, or attempts to equate a policy violation to a constitutional violation—has been repeatedly rejected by federal courts, including by the Fourth Circuit.

This Court squarely addressed this issue recently in <u>King v. Riley</u>, and held that the individual defendant was entitled to qualified immunity even when

> there [was] no dispute that for at least part of the morning the window to that cell was covered. [The officer] made ***five separate rounds*** in the hours after [the decedent], the first victim, was attacked. This included walking past [the assailant's] cell mere minutes after [the decedent] entered. [The officer] ***did not look into each cell***. He did not check for contraband. He ***did not verify the location and safety of every inmate***. Such, apparently, was his "common" practice.

<u>Riley</u>, 76 F.4th at 273 (emphasis added). The plaintiff in <u>Riley</u> argued that one defendant, McKan, was deliberately indifferent because he failed to perform proper supervisory checks and walked past the cell where the decedent was being killed "without looking inside despite knowing [the decedent] faced a substantial risk of inmate violence." <u>Id.</u> at 264. Just like this case, the plaintiff in <u>Riley</u> pointed to violent and nonviolent offenders being housed together, and the fact that the assailant had a "violent prison history," including having attempted to kill a prior cellmate. <u>Id.</u> at 263. These arguments are nearly identical to those set forth by the Plaintiff here and adopted by the District

Court, which stated that "Mr. Berry and Mr. Linster knew Mr. King was in a high-security segregation pod with violent inmates and a high risk of inmate-on-inmate violence" but failed to properly supervise inmates, did not conduct proper rounds, and did not look into their cells. (JA1671-1672.) The Fourth Circuit rejected similar arguments in Riley and granted McKan qualified immunity "because there is no clearly established constitutional right to properly conducted security checks" by looking into every cell during security checks. Id. at 264, 267. The Court should do the same here.

King v. Riley is highly analogous to this case, which mainly hinges on the theory that the Individual Defendants should be liable for the failure to follow supervision policies, including a failure to look into Decedent's cell for a period of time during and after the assault. Courts have repeatedly rejected the theory that the failure to conduct rounds in a specific way, for a specific amount of times per hour, or the mere failure to supervise a cell block, amounts to a constitutional violation. See id.; see also Grochowski v. Clayton Cty., 961 F.3d 1311, 1320 (11th Cir. 2020); Cagle v. Sutherland, 334 F.3d 980, 985 (11th Cir. 2003); Jones v. Millspaugh, No. 4:19-cv-00164-TWP-DML, 2021 U.S. Dist.

LEXIS 129126, at *11 (S.D. Ind. July 12, 2021); <u>Jones v. Harrison</u>, No. 4:12-CV-90-D, 2014 WL 3644706 (E.D.N.C. July 22, 2014); <u>Smith v. Atkins</u>, 777 F. Supp. 2d 955 (E.D.N.C. 2011); <u>Peterson v. Midgett</u>, 140 F. Supp. 3d 490 (E.D.N.C. 2015). Following <u>Riley</u>, Plaintiff's non-supervision theories are insufficient to overcome qualified immunity.

Additionally, even accepting that the Individual Defendants heard labored breathing or assumed King was having an asthma attack, but failed to respond within 20 minutes, it is not clearly established that the Individual Defendants would have needed to immediately act, nor that such issues amounted to a serious medical need. The Fourth Circuit has not spoken directly on this issue of whether asthma attacks qualify as a serious medical need for purposes of establishing deliberate indifference. <u>Lore v. Wilkes</u>, No. 1:12CV165, 2013 U.S. Dist. LEXIS 156862, *22-23 (M.D.N.C. Nov. 1, 2013) (noting lack of binding authority, and that "most courts that have addressed the issue" of whether asthma is a serious medical need "have required a showing that the asthma attack was severe or that it led to physical harm"); <u>see also</u> <u>Stoneman v. Thompson</u>, No. CIV. 3:03CV716, 2005 U.S. Dist. LEXIS 47841, 2005 WL 3881432, *4 (E.D. Va. Apr. 19, 2005) ("Plaintiff

has failed to produce any evidence that the defendant was deliberately indifferent to a serious medical need. The record does not indicate that plaintiff's asthma was a serious condition….”), aff'd, 142 F. App'x 167 (4th Cir. 2005); McDuffie v. Housey, No. 9:20-cv-03131-MBS-MHC, 2022 U.S. Dist. LEXIS 184950, *12 (D.S.C. May 12, 2022) (“Indeed, having asthma, or even having an asthma attack, does not automatically qualify as a serious medical need for purposes of the Eighth Amendment.”); Sledge v. Kooi, 564 F.3d 105 (2nd Cir. 2009) (asthma did not constitute a “serious medical need”). Absent binding precedent, it was not clearly established that the Individual Defendants were required to immediately respond to King's labored breathing.

Finally, a case heavily relied upon by the District Court—Pfaller v. Amonette, 55 F.4th 436, 446 (4th Cir. 2022)—does not support the District Court's decision to deny qualified immunity or to circumvent the “clearly established” analysis. (JA1675-1676.) Pfaller is reserved for limited situations where officials “knowingly violate the law” or where the disputed facts would “necessarily include an awareness of the illegality of the defendant's actions.” 55 F.4th at 446-48 (internal quotation marks omitted). The Pfaller Court recognized the limitations

42

of this Fourth-Circuit-created exception, citing Supreme Court precedent in <u>Taylor v. Barkes</u>, 575 U.S. 822 (2015) (per curiam). <u>Id.</u> In <u>Taylor</u>, a case regarding the suicide of an inmate with known mental health issues, the Supreme Court reversed a denial of summary judgment, noting: "even if the Institution's suicide screening and prevention measures contained the shortcomings that respondents allege, no precedent on the books in November 2004 would have made clear to petitioners that they were overseeing a system that violated the Constitution." 575 U.S. at 827.

In light of the <u>Riley</u> case and the precedent cited above, this not a situation that indicates a *per se*, knowing violation of law. Instead, the same analysis in <u>Taylor</u> applies regarding the OCDC's policies on rounds, supervision, and inmate checks—as underscored by the <u>Riley</u> Court, "no precedent on the books" would have clearly established that the Individual Officers' actions violated the Constitution, nor would any precedent necessarily demonstrate that the Individual Officers were violating the law when they waited 20 minutes to check on King. <u>Taylor</u>, 575 U.S. at 827. Thus, the District Court's reliance on <u>Pfaller</u> as

43

an attempt to avoid the "clearly established" prong of the qualified immunity framework should be rejected.

Even crediting the District Court's recitation of the facts in its entirety, the Individual Defendants are each entitled to summary judgment because they did not violate any clearly established rights of the Decedent, and the District Court should be reversed on the second Saucier prong as well.

## IV.   The District Court Erred in Denying Sheriff Blackwood Summary Judgment on the *Monell* Claims.

### A.   Absent an Underlying Constitutional Violation, the Claims Against Sheriff Blackwood Must Fail.

In City of Los Angeles v. Heller, 475 U.S. 796 (1986), the Supreme Court made it clear that if there is no underlying constitutional violation by an individual officer, there can be no liability on the part of the individual officer or the municipality under Monell. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." Id. at 799 (emphasis in original). To borrow an analogy from Judge Rosen, where there is no "kick," neither the foot nor the head can

44

be inculpated.  <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1481 (3d Cir. 1990); <u>Gray v. Laws</u>, 51 F.3d 426, 439 (4th Cir. 1995) ("Finding that Gray suffered no due process violation at all, we affirm the district court's dismissal of the county, OCHD, and Reimer and Laws in their official capacity on the due process claim").

As discussed *supra*, the District Court erred in applying the Fourteenth Amendment standard to the Plaintiff's <u>Monell</u> claim; the District Court erred in ruling that the Individual Defendants violated Plaintiff's rights; and the plethora of case law which notes that policy violations regarding supervision rounds do not amount to a constitutional violation. This Court should thus exercise pendent appellate jurisdiction over the <u>Monell</u> claims asserted as to Sheriff Blackwood, and reverse the District Court's order denying summary judgment on Plaintiff's <u>Monell</u> claim as well.

### B.    Absent a "Clearly Established" Violation of Law, the Claims Against Sheriff Blackwood Are Improper.

It is critical here that, as discussed *Supra* Section III, there is no Supreme Court or Fourth Circuit case clearly establishing that detention officers must be trained on conducting supervision rounds or directly looking into cells, per <u>King v. Riley</u>. This is significant, and

45

should have been dispositive of Plaintiff's <u>Monell</u> claim against Sheriff Blackwood because "a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established." <u>Arrington-Bey v. City of Bedford Heights, Ohio</u>, 858 F.3d 988, 994 (6th Cir. 2017). The trend in our U.S. Courts of Appeal is not to impose liability upon a municipality when the law is unclear on a particular subject, because in such a situation there cannot be fault for purposes of the <u>Monell</u> claim.

This is explained at some length in <u>Arrington-Bey v. City of Bedford Heights, Ohio</u>, in which the Sixth Circuit held that a municipality could not be held liable under Monell for a failure to train officers to identify and secure treatment for certain mental health conditions involving arrestees, stating as follows:

> We likewise agree with the Eighth Circuit that this rule is the only way to thread the needle between permitted failure-to-train liability under <u>City of Canton</u> and impermissible *respondeat superior* liability under <u>Monell</u>. "[W]ithout some form of notice to the city, and the opportunity to conform to constitutional dictates both what it does and what it chooses not to do, the failure to train theory of liability could completely engulf <u>Monell</u>, imposing liability without regard to fault." <u>Id.</u> at 393 (quoting <u>City of Canton</u>, 489 U.S. at 395, 109 S. Ct. 1197 (O'Connor, J.,

> concurring in part and dissenting in part)). Indeed. The Second Circuit takes the same approach. See Townes v. City of New York, 176 F.3d 138, 143-44 (2d Cir. 1999); Young, 160 F.3d at 904. The First, Seventh, and Eleventh Circuits have noted the same requirement of clear constitutional duties. See Febus-Rodrigues v. Betancourt-Lebron, 14 F.3d 87, 94 n.10 (1st Cir. 1994); Robles v. City of Fort Wayne, 113 F.3d 732, 735 (7th Cir. 1997); Young v. City of Augusta, 59 F.3d 1160, 1172 (11th Cir. 1995). And so have we. See Hagans, 695 F.3d at 511.
>
> Arrington-Bey's complaint raises a deliberate-indifference claim. She does not point to any allegedly unconstitutional express policy or municipal act, but instead relies on the absence of a policy and the failure of the City or its final policymakers to train police and jailers about mental health care for arrestees. . . . . With such a claim, she must show that the allegedly violated right was clearly established. And for the reasons noted earlier, she cannot do so. The absence of a clearly established right spells the end of this Monell claim.

858 F.3d at 994-95.

Similarly, in Szabla v. City of Brooklyn Park, Minnesota, 486 F.3d 385 (8th Cir. 2007) (en banc), the Eighth Circuit held that the City could not be held liable under Monell for failing to train officers to give advance warning before commanding a canine to bite and hold a

suspect, because such a constitutional requirement was not clearly established at the pertinent time:

> Where the municipality has not directly inflicted an injury, however, rigorous standards of culpability and causation must be applied, . . . and a showing of deliberate indifference is required. The absence of clearly established constitutional rights . . . undermines the assertion that a municipality deliberately ignored an obvious need for additional safeguards to augment its facially constitutional policy. This is not an application of qualified immunity for liability flowing from an unconstitutional policy. Rather, the lack of clarity in the law precludes a finding that the municipality had an unconstitutional policy at all, because its policymakers cannot properly be said to have exhibited a policy of deliberate indifference to constitutional rights that were not clearly established.

486 F.3d at 393-94 (cleaned up).

As shown by the authorities cited above, Sheriff Blackwood cannot be held liable under Section 1983 for failing to specifically train officers regarding supervision rounds. A municipality "cannot deliberately shirk a constitutional duty unless that duty is clear." Arrington-Bey, 858 F.3d at 995 (citing Szabla, 486 F.3d at 393); Hagan v. Franklin County Sheriff's Office, 695 F.3d 505, 511 (6th Cir. 2012); Revis v. Meldrum, 489 F.3d 273, 288 (6th Cir. 2007); Young v. City of Fulton, 160 F.3d 899,

48

902-24 (2nd Cir. 1998); <u>Robles v. City of Fort Wayne</u>, 113 F.3d 732, 735 (7th Cir. 1997); <u>Young v. City of Augusta</u>, 59 F.3d 1160, 1172 (11th Cir. 1995); <u>Joyce v. Town of Tewksbury</u>, 112 F.3d 19, 23 (1st Cir. 1997); <u>Febus-Rodrigues v. Betancourt-Lebron</u>, 14 F.3d 87, 94 n. 10 (1st Cir. 1994); <u>Williamson v. City of Virginia Beach</u>, 786 F. Supp. 1238, 1264-65 (E.D. Va. 1992) ("Assuming that the constitutional rights alleged by plaintiff did exist, the conclusion that they were not clearly established negates the proposition that the city acted with deliberate indifference"), <u>aff'd</u>, 991 F.2d 793, 1993 WL 127961 (4th Cir. 1993) (unpublished) (per curiam).

In short, accepting as true the policy issues with the Orange County Sheriff's Office in regard to supervision and rounds, it was still improper to deny Sheriff Blackwood's motion for summary judgment on Plaintiff's <u>Monell</u> claim because of the absence of fault.

## C. The Claims Against Sheriff Blackwood Are Otherwise Inappropriate for Lack of Causation.

A local governmental entity may not be held liable for an employee's tortious acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." <u>Collins v. City of Parker Heights</u>, 503 U.S. 115, 120 (1992) (quoting <u>Monell v. New York</u>

City Dept. of Social Services, 436 U.S. 658, 691 (1978)). Instead, governmental liability attaches only when "*execution of a government's policy or custom*, whether made by its law makers or those whose edicts or acts may fairly be said to represent official policy, *inflicts the injury*." Monell, 435 U.S. at 694 (emphasis added). Moreover, "the municipal policy or custom must be the direct cause of—the 'moving force' behind —the constitutional violation." Buffington v. Baltimore County, Md., 913 F.2d 113, 122 (4th Cir.), cert. denied, 499 U.S. 906 (1991) (quoting Monell, 436 U.S. at 694). Plaintiff cannot establish a Section 1983 claim against Sheriff Blackwood unless there is triable evidence that there was a "direct causal link between [the Sheriff's] policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385-86, 109 S. Ct. 1197, 1203 (1989) (emphasis added).

Here, as set forth above and depicted in the video footage pertaining to the incident and assault of Decedent, there is nothing about Sheriff Blackwood's policies that caused the assault to occur, nor anything that contributed to a violation of Decedent's rights. King is first depicted motioning for Grantz to go up to his cell. Thereafter, inmates are depicted attempting to distract officers from King's cell in a

50

coordinated effort to conceal what was happening in King's cell, which is barely visible for seconds on the camera footage. Additionally, nothing in OCDC's policies is relevant to the Individual Defendants' decision whether or not to check on King immediately when they heard labored breathing. Since Plaintiff has not forecast triable evidence of causation, the Court should reverse the District Court and grant summary judgment in favor of Sheriff Blackwood.

## V.   The District Court Erred in Denying Summary Judgment on the Claim on the Sheriff's Surety Bond.

N.C. Gen. Stat. § 58-76-5 provides a plaintiff with a statutory cause of action on a sheriff's official bond. Stafford v. Barker, 129 N.C. App. 576, 585, 502 S.E.2d 1, 6, rev. denied, 348 N.C. 695 (1998). In order to state a claim under N.C. Gen. Stat. § 58-76-5, the plaintiff must be able to prove every element of a common law tort claim, such as negligence. Id.; see also N.C. Gen. Stat. § 58-76-5 (referring to "neglect, misconduct, or misbehavior"). For the same reasons Defendants should have prevailed on plaintiff's Section 1983 claims, including any claims analyzed under the purely objective standard, this Court should reverse the District Court's order denying summary judgment as to the Sheriff's surety bond.

## <u>CONCLUSION</u>

Based on the foregoing, this Court should assert jurisdiction over all of the Defendants joining in this appeal, reverse the District Court's denial of summary judgment for the Defendants, hold that each of the Individual Officers are entitled to qualified immunity, and hold that Sheriff Blackwood and Travelers are likewise entitled to summary judgment as a matter of law.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Defendants request oral argument since the decisional process would be "significantly aided" by such argument. <u>See</u> Local Rule 34. This appeal relates to matters of first impression in the U.S. Court of Appeals for the Fourth Circuit (*i.e.*, whether to apply the Fourteenth Amendment to a post-guilty-plea, pre-sentenced inmate). Consequently, oral argument could serve to edify this Court and the parties involved.

Respectfully submitted, this the 11th day of June, 2025.

WOMBLE BOND DICKINSON (US) LLP

/s/ *Brian F. Castro*
Brian F. Castro
Sonny S Haynes

*Counsel for Appellants*

52

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

this document contains <u>10,146</u> words.

2.    This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14-point Century Schoolbook</u>.

Respectfully submitted, this 11th day of June, 2025.

/s/ Brian F. Castro
Brian F. Castro
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
(919) 755-2100

Sonny S Haynes
WOMBLE BOND DICKINSON (US) LLP
1 West 4th Street
Winston-Salem, NC 27101
(336) 721-3632

*Counsel for Appellants*
